IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTY A. SNAIR and JAMIE L. SNAIR, | CIVIL DIVISION |
| Plaintiffs, | Docket No. :  Consolidated at 1:18-cv-00333 |
| vs. | |
| SPEEDWAY LLC, | **The Honorable Susan Paradise Baxter** |
| Defendant. | *Electronically filed* |
| ------------------------------------------------------------ | |
| MONTY A. SNAIR and JAMIE L. SNAIR, | |
| Plaintiffs, | |
| vs. | |
| SHIELDS FACILITIES MAINTENANCE, | |
| Defendant, | |
| vs. | |
| SAUER SNOWPLOWING & LAWN CARE, LLC, | |
| Third-Party Defendant. | |

**SHIELDS FACILITIES MAINTENANCE, LLC'S CONCISE STATEMENT
OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes the DEFENDANT/THIRD PARTY PLAINTIFF, SHIELDS FACILITIES MAINTENANCE, LLC ("SFM"), by its attorneys, STEPHEN P. PLONSKI, ESQUIRE and MARGOLIS EDELSTEIN, and, in accordance with  Local Rule LCvR 56(B)(1), files the following Concise Statement of Material Facts in Support of Motion for Summary Judgement, as follows:

**I.      Undisputed and Material Background Facts**

1. In this consolidated civil action, Plaintiffs, Monty A. Snair and Jamie L. Snair (collectively "Plaintiffs"), seek to recover damages for personal injuries allegedly sustained by Monty Snair from a slip and fall that occurred December 13, 2016 at the Speedway store #29121 located in Barkeyville, Venango County, Pennsylvania (hereinafter the "Barkeyville Speedway" or the "Subject Premises")).

**EVIDENCE: Notice of Removal, Exhibit A Complaint filed in Venango County, Pennsylvania against Speedway hereinafter "Speedway Complaint") (ECF 1); Complaint filed at docket number 1:18-cv-00376 (ECF 1) (hereinafter "SFM Complaint").[1]**

2. Speedway, LLC (hereinafter "Speedway") was the owner of the Barkeyville Speedway on December 13, 2016.

**EVIDENCE: (Speedway Complaint, ¶4 (ECF 1); Speedway Answer and Affirmative Defenses, ¶4 (ECF 3).**

3. Speedway had entered into a contract with SFM dated 11/1/2015 titled Basic Service Contract, Snow Plowing Services ("Basic Service Contract").[2]

---

[1] Plaintiffs initially sued Speedway only in the Court of Common Pleas of Venango County, Pennsylvania. Speedway removed the that case to Federal Court on the basis of diversity at Docket 1:18-cv-00333 (ECF 1). Thereafter, plaintiffs filed a second lawsuit against SFM only in Federal Court at Docket 1:18-cv-00376 (ECF 1). SFM filed a Third-Party Complaint against Sauer Snowplowing & Lawncare, LLC ("Sauer") on January 28, 2019. (ECF 12). The two federal court cases were then consolidated by Order of this Court dated May 2, 2019 at the present docket number, 1:18-cv-00333. (ECF 14).

[2] A true and correct copy of the Basic Service Contract is attached to SFM's Appendix of Exhibits in Support of Motion for Summary Judgment ("Appx.") as **Exhibit 1.**

**EVIDENCE: Third Party Complaint ¶11, Exhibit B filed at docket number 1:18-cv-00376 (ECF 12); Basic Service Contract (Appx., Exhibit 1)**.

4. All of SFM's duties with respect to the Subject Premises were contained in the Basic Service Contract.

**EVIDENCE: Answer to SFM Complaint filed at docket number 1:18-cv-00376, Third Affirmative Defenses (ECF 7); Basic Service Contract (Appx., Exhibit 1).**

5. In particular, with respect to snow and ice removal services, SFM was required to plow when there was snow in excess of 2 inches.

**EVIDENCE: Answer to SFM Complaint filed at docket number 1:18-cv-00376, Twenty-Second Affirmative Defense (ECF 7), Exhibit A**; **(Appx., Exhibit 1); Sauer Depo., at 21; 62-63 (Appx., Exhibit 2); Cockrell Depo., at 66 (Appx., Exhibit 3).**[3] [4]

6. With respect to salt application, "verbal approval" was required "prior to each application of rock salt and/or Calcium Chloride to the lot and public sidewalks"

**EVIDENCE: Basic Service Contract (Appx. Exhibit 1).**

---

[3] True and correct copies of the relevant pages of the transcript from the February 20, 2020 deposition of John Sauer are attached to SFM's Appendix of Exhibits in Support of Motion for Summary Judgment ("Appx") as **Exhibit 2**.

[4] True and correct copies of the relevant pages of the transcript from the February 17, 2020 deposition of Nancy Cockrell are attached to SFM's Appendix of Exhibits in Support of Motion for Summary Judgment ("Appx") as **Exhibit 3**.

7. The process for notifying SFM to apply salt at the Barkeyville Speedway would entail a "ticket" being requested by the management at the Barkeyville store location which had to be approved by the Speedway District Manager. Once approved the ticket would then be sent to SFM via email.

**EVIDENCE: Jackson Depo., at 15; 22-23 (Appx. Exhibit 4)[5]; Cockrell Depo., at 35-36 (Appx. Exhibit 3).**

8. The requests for salting of the parking lot were made by Speedway "as needed."

**EVIDENCE: Jackson Depo., at 19 (Appx. Exhibit 4).**

9. SFM did not perform the actual snow plowing and salting at the Barkeyville Speedway in December 2016.

**EVIDENCE: Cockrell Depo., at 12 (Appx. Exhibit 3); Sauer Depo., at 33 (Appx. Exhibit 2); Third Party Complaint filed at docket number 1:18-cv-00376, ¶14. (ECF 12).**

10. SFM entered into a subcontract with Sauer dated September 7, 2016 (hereinafter "Subcontractor Agreement").[6]

**EVIDENCE: Third Party Complaint filed at docket number 1:18-cv-00376, ¶11 Exhibit C (ECF 12) (Appx. Exhibit 5); Sauer Depo., at 20 (Appx. Exhibit 2).**

---

[5] True and correct copies of the relevant pages of the transcript from the May 19, 2020 deposition of Cassandra Jackson are attached to SFM's Appendix of Exhibits in Support of Motion for Summary Judgment ("Appx") as **Exhibit 4**.

[6] A true and correct copy of the Subcontractor Agreement is attached to SFM's Appendix of Exhibits in Support of Motion for Summary Judgment ("Appx.") as **Exhibit 5.**

11. Sauer agreed, pursuant to the terms of the Subcontactor Agreement, to perform "Subcontracted Services" in accordance with the terms of the Subcontractor Agreement and the Statement of Subcontract Work (Exhibits C to Subcontractor Agreement).

**EVIDENCE: Third Party Complaint filed at docket number 1:18-cv-00376, ¶¶13-15, Exhibit C (ECF 12) (Appx. Exhibit 5).**

12. The areas of service to be performed by Sauer were outlined in the Scope of Work (Exhibit D) to the Subcontractor Agreement.[7]

**EVIDENCE: Subcontractor Agreement (Appx. Exhibit 5); Scope of Work (Exhibit D); (Appx. Exhibit 6).**

13. In December 2016, Sauer as the subcontractor of SFM was not permitted to apply salt to the parking lot areas unless requested and approved by Speedway.

**EVIDENCE: Scope of Work (Appx. Exhibit 6); Sauer Depo., at 25-26 (Appx. Exhibit 2); Cockrell Depo., at 22 (Appx. Exhibit 3); Jackson Depo., at 19 (Appx. Exhibit 4).**

14. Plaintiffs claim that Monty Snair slipped and fell on an accumulation of "dirty" snow with "bumpy" ice under it located between pump (#10) and the canopy support on December 13, 2016.

---

[7] A true and correct copy of the Scope of Work (Exhibit D) is attached to SFM's Appendix of Exhibits in Support of Motion for Summary Judgment ("Appx.") as **Exhibit 6.**

**EVIDENCE: SFM Complaint filed at docket number 1:18-cv-00376, ¶ 8 (ECF 1) ; Snair Depo., at 59-63;67-68 (Appx. Exhibit 7).** [8]

15. SFM was not in possession, custody or control of the Speedway parking lot at the time Monty Snair slipped and fell.

**EVIDENCE: Answer to SFM Complaint filed at docket number 1:18-cv-00376, Sixth Affirmative Defense (ECF 7).**

II. **Undisputed and Material Facts Establishing a Lack of a Legal Duty owed by SFM at the time of Monty Snair's fall**

16. Per the undisputed surveillance footage, Monty Snair slipped and fell at 12:18:40 on December 13, 2016.

**EVIDENCE: Snair Depo. at 17; 72; Deposition Exhibit 1, page 4 (Appx. Exhibit 7).**

17. SFM does not actually provide the services for the customer. Rather, they locate small subcontractors on the local level to provide the actual services.

**EVIDENCE: Cockrell Depo. at 9 (Appx. Exhibit 3).**

18. SFM had no offices or employees working in Pennsylvania in December 2016.

**EVIDENCE: Cockrell Depo. at 10-11 (Appx. Exhibit 3).**

---

[8] True and correct copies of the relevant pages of the transcript from the February 28, 2020 deposition of Plaintiff Monty Snair are attached to SFM's Appendix of Exhibits in Support of Motion for Summary Judgment ("Appx.") as **Exhibit 7**.

19. Sauer did the actual plowing and salting of the Subject Premises parking lot pursuant to and in accordance with the terms of the Subcontractor Agreement.

**EVIDENCE: Sauer Depo. at 17-21;33 (Appx. Exhibit 2).**

20. Sauer was last present at the Subject Premises to plow the parking lot before the time of Mr. Snair's fall on December 12, 2016.

**EVIDENCE: Sauer Depo. at 40;  Deposition Exhibit 2  (Appx. Exhibit 2).**

21. There was less than two (2) inches of snowfall on December 13, 2016, prior to the time of Mr. Snair's slip and fall.

**EVIDENCE: Snair Depo. at 16; 151; 155; Deposition Exhibit 1 (Appx. Exhibit 7).**

22. It started snowing between 9:00 and 10:00 a.m. and continued to snow off and on that morning.

EVIDENCE:  **Snair Depo. at 38-39 (Appx. Exhibit 7).**

23. There was a light dusting of snow on the parking lot service when Mr. Snair arrived at the Subject Speedway location.

**EVIDENCE: Snair Depo. at 48; 64 (Appx. Exhibit 7).**

24. The photographs in Exhibit 1 to his deposition accurately depict the conditions of the parking lot when Mr. Snair arrived on December 13, 2016

**EVIDENCE:  Snair Depo. at 147; Deposition Exhibit 1 (Appx. Exhibit 7).**

25. Speedway did not request that the parking lot be salted until after being informed by a customer that the parking lot was slippery.

**EVIDENCE: Jackson Depo. at 59-60 (Appx. Exhibit 4).**

26. Speedway did not request a salt application until 12:37 p.m.

**EVIDENCE: Sauer Depo. at 44-45; Deposition Exhibit 2 (Appx. Exhibit 2); Cockrell Depo. at 43-44 (Appx. Exhibit 3).**

27. The salting of the Speedway parking lot was not performed by Sauer until after 12:37 p.m. on December 13, 2016.

**EVIDENCE: Sauer Depo., at 46; Deposition Exhibit 2 (Appx. Exhibit 2).**

III. **Undisputed and material facts regarding the lack of evidence that the snow and ice removal services performed by SFM or Sauer were performed in a negligent manner or that SFM had notice of an alleged defective condition on the Subject Premises**

28. Speedway admits that it is not contending that SFM or Sauer were responsible, by act or omission, for causing or contributing to the subject fall.

**EVIDENCE: Speedway Answer and Objections to Plaintiffs' First Set of Interrogatories and Request for Production of Documents, No. 4 (Appx. Exhibit 8)[9].**

---

[9] A true and correct copy of Speedway's Answer to Interrogatory No. 4) is attached to SFM's Appendix of Exhibits in Support of Motion for Summary Judgment ("Appx.") as **Exhibit 8.**

29. Sauer last performed plowing of the parking lot of the subject premises on December 12, 2016 prior to the alleged incident.

**EVIDENCE: Sauer Depo. at 40; Deposition Exhibit 2 (Appx. Exhibit 2); Cockrell Depo. at 59-60 (Appx. Exhibit 3).**

30. Sauer last applied salt at the Subject Premises on December 11, 2016.

**EVIDENCE:  (Cockrell Depo. at 57-59 (Appx. Exhibit 3) Sauer Depo. at 44; Deposition Exhibit 2 (Appx. Exhibit 2).**

31. Sauer was only permitted to apply salt to the Subject Premises when requested and approved by Speedway.

**EVIDENCE: Sauer Depo. at 25-26 (Appx. Exhibit 2); Cockrell Depo. at 22;66 (Appx. Exhibit 3).**

32. The area where Mr. Snair fell was not wide enough to drive through or get a snow plow blade through.

**EVIDENCE: Snair Depo. at 150 (Appx. Exhibit 7); Sauer Depo. at 38 (Appx. Exhibit 2).**

33. Sauer would plow the snow in the area of the gas dispensers to the center and away from the fuel islands and the area identified by Mr. Snair where he slipped and fell.

**EVIDENCE: Sauer Depo. at 38-39; 55 (Appx. Exhibit 2).**

34. Sauer never shoveled the areas near the fuel dispensers and never hand-salted those areas. He only plowed and salted with the salt spreader on the back of his truck.

**EVIDENCE: Sauer Depo. at 28; 60-61 (Appx. Exhibit 2).**

35. Mr. Snair did not know how the condition he alleged he slipped on was created.

**EVIDENCE: Snair Depo. at 80 (Appx. Exhibit 7).**

36. Mr. Snair did not know how long that alleged condition existed on the premises, prior to his slip and fall.

**EVIDENCE: Snair Depo. at 80 (Appx. Exhibit 7).**

37. Mr. Snair did not know if anyone at Speedway knew about the alleged condition, prior to his fall.

**EVIDENCE: Snair Depo. at 80 (Appx. Exhibit 7).**

**IV.**   **Undisputed and material facts demonstrating that Mr. Snair was not looking where he was walking and failed to heed an open and obvious condition**

38. Mr. Snair lived his whole live in Western Pennsylvania and he was familiar with snow and ice and bad weather and that you can fall on snow and or ice.

**EVIDENCE: Snair Depo. at 40 (Appx. Exhibit 7).**

39. When Mr. Snair pulled up to the fuel island, he did not pay attention to see if there was snow at or around the gas station pump island.

**EVIDENCE: Snair Depo. at 48; 51 (Appx. Exhibit 7).**

40. When Mr. Snair got out of his truck and walked back to insert the fuel nozzle he did not see any condition or ice that concerned him.

**EVIDENCE: Snair Depo. at 54 (Appx. Exhibit 7).**

41. After paying, Mr. Snair began to fuel the vehicle. He then remembered that he needed to fill out a paper card to record the fuel purchase which was located in the cab of the truck.

**EVIDENCE: Snair Depo. at 56 (Appx. Exhibit 7).**

42. Mr. Snair found his way back to the cab was blocked by the fuel hose.

**EVIDENCE: Snair Depo. at 56 (Appx. Exhibit 7).**

43. Mr. Snair decided not to attempt to step over the fuel hose.

**EVIDENCE: Snair Depo. at 59 (Appx. Exhibit 7).**

44. Mr. Snair decided to cut through and around the fuel island in order to get to the front of the cab to retrieve the paper card from the cab of his truck.

**EVIDENCE: Snair Depo. at 59 (Appx. Exhibit 7).**

45. Mr. Snair did not look in the area where he was going to walk.

**EVIDENCE: Snair Depo. at 59 (Appx. Exhibit 7).**

46. Mr. Snair described the walkway he was going to cut through as being a "four-foot wide area" between the canopy post and the fuel pump.

**EVIDENCE: Snair Depo. at 60-61 (Appx. Exhibit 7).**

47. Mr. Snair was able to see the area where he was going to walk.

**EVIDENCE: Snair Depo. at 63 (Appx. Exhibit 7).**

48. There was nothing impeding Mr. Snair's ability to see this four-foot area.

**EVIDENCE: Snair Depo. at 63 (Appx. Exhibit 7).**

49. Mr. Snair "didn't pay no mind" as to whether there was snow or ice in the four-foot area before making his way into that area.

**EVIDENCE: Snair Depo. at 63 (Appx. Exhibit 7).**

50. Mr. Snair did not look for any hazards.

**EVIDENCE:  Snair Depo. at 63 (Appx. Exhibit 7).**

51. Mr. Snair did not see a dusting of snow in the four-foot area because he did not pay attention to it and he does not look down.

**EVIDENCE:  Snair Depo. at 64 (Appx. Exhibit 7).**

52. Mr. Snair did not see any snow in the area where he fell before he fell, because he "didn't pay no mind to it."

**EVIDENCE:  Snair Depo. at 66 (Appx. Exhibit 7).**

53. He did not pay any mind to the area he walked into prior to falling before he walked into it.

**EVIDENCE:  Snair Depo. at 145 (Appx. Exhibit 7).**

54. When Mr. Snair cut through the four-foot area he was looking to see if any cars were coming and he was not looking down.

**EVIDENCE: Snair Depo. at 181 (Appx. Exhibit 7).**

V. **Undisputed and material facts supporting SFM's claim for indemnity and defense from Sauer**

55. Sauer agreed to perform the "Subcontracted Work" and related "Specifications" as set forth on the "Statement of Subcontract Work" attached as Exhibit C to the Subcontractor Agreement.

**EVIDENCE: Third Party Complaint filed at docket number 1:18-cv-00376, ¶¶13-15, Exhibit C (ECF 12) (Appx. Exhibit 5).**

56. Sauer further agreed to perform the Subcontracted Services in a "good and workmanlike manner."

**EVIDENCE: Third Party Complaint filed at docket number 1:18-cv-00376, ¶15, Exhibit C (ECF 12) (Appx. Exhibit 5).**

57. The Subcontractor Agreement contains the following provision:

### Article 6

### Indemnification

> Subcontractor shall indemnify and hold harmless Shields, its customers, and their respective owners, subsidiaries and affiliates, as well as the officers, directors, and employees of each, from and against any damages, fines, penalties, costs and other amounts (including reasonable attorney's fees and expenses) resulting from claims, demands, or causes of action relating to or arising out of or caused by: (i) Subcontractors performance of the Subcontracted

>Services under this Agreement, including claims, demands or causes of action relating to or arising out the death of or personal injury to any person (including to the Subcontractor's employees) or damage to tangible personal property or (ii) any breach by Subcontractor of its representations, warranties, covenants or obligations under this Agreement.

**EVIDENCE: Third Party Complaint filed at docket number 1:18-cv-00376, ¶17, Exhibit C (ECF 12) (Appx. Exhibit 5).**

58.	The Snairs have filed a Complaint against SFM claiming it was negligent for *inter alia* causing or permitting a dangerous an unsafe condition to exist on the subject property and in negligently maintaining and operating the premises resulting in bodily injury and damages. **EVIDENCE:  Third Party Complaint filed at docket number 1:18-cv-00376, ¶18, Exhibit A (ECF 12) (Appx. Exhibit 5).**

Date: June 29, 2020                                  Respectfully submitted,

**JURY TRIAL DEMANDED**                **MARGOLIS EDELSTEIN**

　　　　　　　　　　　　　　　　　　　　 */s/ Stephen P. Plonski*
　　　　　　　　　　　　　　　　　　　　STEPHEN P. PLONSKI, ESQUIRE
　　　　　　　　　　　　　　　　　　　　PA I.D. No. 85073
　　　　　　　　　　　　　　　　　　　　splonski@margolisedelstein.com

　　　　　　　　　　　　　　　　　　　　535 Smithfield Street, Suite 1100
　　　　　　　　　　　　　　　　　　　　Pittsburgh, PA 15222
　　　　　　　　　　　　　　　　　　　　(412) 355-4971
　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant/Third Party Plaintiff,*
　　　　　　　　　　　　　　　　　　　　*Shields Facilities Maintenance, LLC*