IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONTY ALLEN SNAIR and JAMIE L. SNAIR, | ) ) | |
| Plaintiffs, | ) ) ) | 1:18-CV-00333-CCW (Consolidated) 1:18-CV-00376-CCW |
| v. | ) ) | |
| SPEEDWAY LLC | ) ) | |
| Defendant. | ) ) | |
| ----------------------------------------------------- | ) ) | |
| MONTY ALLEN SNAIR and JAMIE L. SNAIR, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | |
| SHIELDS FACILITIES MAINTENANCE, | ) ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| SAUER SNOWPLOWING & LAWN CARE, LLC, | ) ) ) | |
| Third-Party Defendant. | ) | |

## **OPINION**

Before the court are motions for summary judgment filed by Defendant Speedway LLC

("Speedway") and Defendant/Third-Party Plaintiff Shields Facilities Maintenance ("Shields"),

ECF Nos. 27 and 30, [1] and cross-motions for summary judgment filed Shields and Third-Party

---

[1] Unless otherwise noted, all ECF references are to documents filed on the consolidated docket at 1:18-cv-00333.

Defendant Sauer Snowplowing & Landscaping, LLC ("Sauer").  ECF Nos. 30 and 34.  Having

been fully briefed, these motions are ripe for disposition.

I.    **Background**

The basic facts underlying this case are not in dispute.

A.    **The Accident**

On December 13, 2016, Plaintiff Monty Allen Snair ("Mr. Snair") slipped and fell on a

patch of ice and snow at a Speedway gas station in Barkeyville, PA.  ECF No. 29 at ¶ 1;  ECF No.

31 at ¶ 1.  At the time of the accident, Mr. Snair, working as a driver for FedEx, was refueling his

delivery truck.  ECF No. 29 at ¶¶ 2, 4.  After Mr. Snair began fueling the truck, he recalled that he

needed certain paperwork, located in the truck's cab, to document information required by FedEx

regarding the fuel purchase.  *Id.* at ¶ 11.  With the fueling hose between himself and the cab, Mr.

Snair elected to circle around the pump to reach the front of his truck.  *Id.* at ¶ 14;  ECF No. 31 at

¶¶ 42–43.  To do so, Mr. Snair had to pass through an approximately four-foot wide gap between

the pump and a column supporting the canopy covering the fuel-dispensing area.  ECF No. 29 at

¶ 14;  ECF No. 31 at ¶ 44.  While passing through this area, Mr. Snair slipped and fell on a patch

of ice and snow, sustaining injuries.  ECF No. 29 at ¶ 20;  ECF No. 31 at ¶ 1.

B.    **Snow Removal Services**

Prior to the accident, Speedway contracted with Shields to provide snow and ice removal

services at the Barkeyville gas station.  ECF No. 36 at ¶ 10;  ECF No. 40 at ¶ 10.  Shields, in turn,

engaged Sauer as a subcontractor to plow and salt the lot.  ECF No. 36 at ¶ 11;  ECF No. 40 at ¶

11.  Under both the Shields contract and Sauer subcontract, snow plowing was to be performed at

Speedway's request or when there was two inches or more of snowfall.  ECF No. 31 at ¶¶ 3, 5,

10–13;  ECF No. 36 at ¶ 14.  Shields and Sauer were also prohibited from salting without prior request by or approval from Speedway.  ECF No. 31 at ¶¶ 6, 10–13;  ECF No. 36 at ¶¶ 15–16.

Before the December 13, 2016 accident, Sauer had last plowed at the Barkeyville station on December 12, 2016 and had last salted on December 11, 2016.  ECF No. 31 at ¶¶ 29–30;  ECF No. 36 at ¶ 45.  Snowfall on the date of the accident prior to Mr. Snair's fall had not reached two inches of accumulation, ECF No. 31 at ¶ 21, amounting to no more than a "light dusting."  ECF No. 29 at ¶ 5;  ECF No. 36 at ¶ 24;  ECF No. 40 at ¶ 24.  After Mr. Snair's fall, Speedway employees requested salting and plowing at the Barkeyville station, which Sauer completed later that day.  ECF No. 32 at ¶¶ 25–27;  ECF No. ¶¶ 27–28, 46.

### C.  Procedural history

Plaintiffs filed suit against Speedway in the Court of Common Pleas of Venango County, Pennsylvania, on September 18, 2018.  Speedway was served on October 3, 2018, and thereafter timely removed the case to federal court.  ECF No. 1.  On December 6, 2018, Plaintiffs filed a separate federal court action against Shields.  ECF No. 1 (Docket 1:18-cv-00376).  Shields, in turn, filed a third-party complaint against Sauer on January 28, 2019.  ECF No. 12 (Docket 1:18-cv-00376).  By order dated May 2, 2019, the two actions were consolidated at Civil Action No. 18-333 for the purposes of discovery and trial.  ECF No. 29 (Docket 1:18-cv-00376).

In their complaint against Speedway, Plaintiffs seek damages for Speedway's allegedly negligent maintenance of its property (Count I) and for loss of consortium on behalf of Jamie L. Snair, Mr. Snair's wife (Count II).  ECF No. 1-2.  Plaintiffs seek damages from Shields on essentially the same grounds.  ECF No. 1 (Docket 1:18-cv-00376).  Shields, in turn, seeks indemnification from Sauer under the subcontract (Count I);  contribution (Count II);  and breach of contract (Count III).  ECF No. 12 (Docket 1:18-cv-00376).

Fact discovery closed on May 29, 2020.  ECF No. 26.  On June 29, 2020, Speedway, Shields, and Sauer filed motions for summary judgment.  ECF Nos. 27, 30, and 34.  In its motion, Speedway seeks summary judgment on all of Plaintiffs' claims.  ECF No. 27.  Shields likewise seeks summary judgment on all of Plaintiffs' claims and seeks entry of a judgment that it is "entitled to full indemnification from Sauer."  ECF No. 30.  Sauer seeks judgment in its favor on the claims asserted against it in Shields' Third-Party Complaint.  ECF Nos. 34 and 35.

## II.     Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Slappy-Sutton v. Speedway LLC*, 764 Fed.Appx. 271, 272 (3d Cir. 2019) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248(1986)). "To be material, a fact must have the potential to alter the outcome of the case." *Canton v. Kmart Corp.*, 470 Fed.Appx. 79, 82 (3d Cir. 2012) (citing *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).  Importantly, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  *Kaucher,* 455 F.3d at 423 (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried this initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, while "[t]he evidence of the nonmovant is to be

believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255,

"Rule 56(e)…requires the nonmoving party to go beyond the pleadings" and point to "'specific

facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986) (citation omitted).  But, while the nonmovant's "'affirmative evidence—regardless of

whether it is direct or circumstantial—must amount to more than a scintilla…[it] may amount to

less (in the evaluation of the court) than a preponderance.'"  *Canton*, 470 Fed.Appx. at 82–83

(quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

## III.    Discussion

Federal jurisdiction in the consolidated cases is based on diversity of citizenship under 28

U.S.C. § 1332(a).  Accordingly, the Court will apply the substantive law of the forum state,

Pennsylvania, in resolving these motions.  *See Spence v. ESAB Group*, 623 F.3d 212, 216 (3d Cir.

2010) (noting that "as a federal court sitting in diversity, we are required to apply the substantive

law of the state whose law governs the action.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64,

78 (1938)).

### A.    Speedway's Motion for Summary Judgment will be Denied

#### 1.    There is a Genuine Issue of Fact as to whether Speedway had Notice of the Hazardous Snow and Ice

Speedway first argues that Plaintiffs lack evidence showing that Speedway had notice of

the snow and ice on which Mr. Snair fell.  ECF No. 28 at 9.  Specifically, Speedway contends that

Plaintiffs are "unable to establish that the Speedway had actual or constructive notice of the

condition" because Plaintiffs cannot establish how the snow or ice came to be in the area of Mr.

Snair's fall or how long it was present there.  *Id.* at 11.  In the absence of such evidence, Speedway

concludes that it owed no duty of care to Mr. Snair and cannot be held liable for his injuries.  *Id.*

In response, Plaintiffs point out that due to the snow and ice's location (under the canopy) and condition (Mr. Snair testified it was "dirty" and "bumpy"), a jury could infer that the snow and ice had been present for a significant period and its accumulation was not the result of natural precipitation. ECF No. 46 at 8–9. Plaintiff also notes that Speedway employees were supposed to check for snow and ice around the pumps throughout the day, but that there is no evidence that any inspection occurred between the time the lot was plowed on December 12 and the time of the accident on December 13. *Id.* Plaintiff contends that had these inspections been performed, Speedway would have discovered the ice and snow. *Id.* Accordingly, Plaintiffs argue that issues of fact exist as to whether Speedway had constructive notice. *Id.*

Although Plaintiffs articulate that under Pennsylvania premises liability law "[n]otice may be actual or constructive," ECF No. 46 at 7, they appear to argue only that there is a genuine question of fact as to whether Speedway had *constructive notice*. As such, the Court will confine its analysis to the question of constructive notice.

### a.      Legal Principles

It is undisputed that Mr. Snair was a business invitee of Speedway at the time of the accident. *See* ECF No. 28 at 9; ECF no. 46 at 7. Under Pennsylvania law, "[t]he landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." *Truax v. Roulhac*, 126 A.3d 991, 997 (Pa. Super. Ct. 2015) (quoting *Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 253 (Pa. Super. Ct. 2014)).

Pennsylvania courts have adopted the Restatement (Second) of Torts § 343, which holds a landowner responsible for an invitee's injuries when the landowner:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

    (b) should expect that they will not discovery or realize the danger, or will fail to
        protect themselves against it, and
    (c) fails to exercise reasonable care to protect them against the danger.

*Orengo v. Speedway LLC*, Civil Action No. 18-0657, 2019 U.S. Dist. LEXIS 188583, at *6 (E.D. Pa. Oct. 31, 2019) (citing *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983)).  Thus, "[i]n order to recover damages in a 'slip and fall' case…[the] evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition." *Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. Ct. 1994).

To establish constructive notice, "[p]laintiff must provide evidence that demonstrates 'the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it.'"  *Orengo*, 2019 U.S. Dist. LEXIS 188583, at *9 (quoting *McDowell v. Moran Foods, LLC*, 680 Fed.Appx. 72, 75 (3d Cir. 2017)).  Furthermore, constructive notice may be inferred from weather conditions, but only where "the defendant had knowledge of both the weather condition at the time of the accident and the fact that the weather condition created hazards on the premises."  *Tameru v. W-Franklin, L.P.*, 350 Fed.Appx. 737, 740 (3d Cir. 2009) (citing *Cohen v. Food Fair Stores, Inc.*, 155 A.2d 441, 442–43 (Pa. Super. Ct. 1959)).

### b.      Analysis:  Genuine Issues of Fact Exist Regarding Constructive Notice

Here, there is sufficient evidence, viewed in the light most favorable to Plaintiff, for a jury to conclude that the patch of snow and ice "existed for such a length of time that in the exercise of reasonable care the owner should have known of it."  *Orengo*, 2019 U.S. Dist. LEXIS 188583, at *9 (quoting *McDowell,* 680 Fed.Appx. at 75).  First, although it snowed "off and on" the morning of the accident, the evidence points to a "light dusting" of snow on the parking lot, not the "inch" of frozen material Mr. Snair allegedly encountered.  ECF No. 49-1 at 39:7–11; 48:2–8; 145:5–10 (Dep. of M. Snair).  Second, a jury could infer that the ice and snow Mr. Snair fell on was not

result of that "light dusting," given its position under the canopy. ECF No. 46 at 2. Finally, a jury could conclude that Speedway had knowledge of "both the weather condition at the time of the accident and the fact that the weather condition created hazards on the premises," *Tameru*, 350 Fed.Appx. at 740, from (1) the fact of intermittent snowfall on the morning of the accident; (2) the 24 degree temperature recorded in Speedway's incident report, *see* ECF No. 49-5 9 at 45:25–46:2 (Dep. of Casandra Jackson); and (3) large, visible patches of snow or ice in photos of the parking lot, *see* ECF No. 29-2 at 50-51. Accordingly, there is a genuine issue of fact as to whether Speedway had constructive notice of the snow and ice where Mr. Snair fell.

### 2. There are Genuine Questions of Fact Regarding the Applicability of the Pennsylvania Choice of Ways Doctrine.

Next, Speedway argues that under Pennsylvania's "choice of ways" doctrine, recovery should be barred because Mr. Snair chose the snow- and ice-covered path around the pump, rather than taking allegedly safer routes available to him (e.g., navigating around (or removing and replacing) the fuel hose or circling around the other side of his truck). ECF No. 28 at 12. Speedway contends that Mr. Snair "failed to exercise ordinary judgment in taking account of his surroundings…and, in doing so, failed to avoid an open and obvious condition on the premises when alternative safe options were available." *Id.* at 15.

Plaintiffs respond that assumption of the risk doctrines, like "choice of ways," normally will not apply to bar recovery unless "it is **quite clear** that the **specific** risk that occasioned the injury was both **fully appreciated** and **voluntarily accepted**." ECF No. 46 at 10 (emphasis original) (citing *Bullman v. Giultoli*, 761 A.2d 566, 571 (Pa. Super. Ct. 2000)). Plaintiffs assert that the alternative paths suggested by Speedway were not obviously safer at the time of the accident and that Mr. Snair was looking out for other hazards, like vehicles moving around the lot.

*Id.* at 10–11.  Accordingly, Plaintiffs argue that summary judgment on this ground should be denied.  *Id.* at 12.

<strong>a.      Legal Principles</strong>

Under the "choice of ways" doctrine, recovery may be barred where there is "(1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger." *Updyke v. BP Oil Co.*, 717 A.2d 546, 552 (Pa. Super. Ct. 1998) (citations omitted).  However, "Pennsylvania courts have generally been loath to apply the alternate ways [choice of ways] doctrine….  [I]n those very few cases where the doctrine has been applied to find that the plaintiff was contributorily negligent, the danger the plaintiff chose to confront was indisputably obvious." *O'Brien v. Martin*, 638 A.2d 247, 249 (Pa. Super. Ct. 1994);  *see also Mirabel v. Morales*, 57 A.3d 144, 154 (Pa. Super. Ct. 2012).  Indeed, one Pennsylvania court has noted that the choice of ways doctrine, which is based on the concept of contributory negligence, conflicts with Pennsylvania's comparative negligence scheme.  *See Kweh v. US Airways*, No. 1005 EDA 2016, 2017 Pa. Super. Unpub. LEXIS 4009, at *7 (Pa. Super. Ct. Oct. 27, 2017) ("Further, the doctrine, as stated, is in conflict with 42 Pa.C.S. § 7102, regarding comparative negligence.").

In *Kweh*, the Superior Court overturned summary judgment entered in defendants' favor on choice of ways where plaintiff, a baggage handler, was struck in the head by an automatic overhead door when he tried to exit a building through a baggage door because the pedestrian door was blocked.  *Id.* at *2.  The Court found that "Kweh's knowledge of the dangers of the baggage door was disputed.  Accordingly, it cannot be said, as a matter of law, that Kweh opted for the dangerous path when a safe path was readily available." *Id.* at *7.  Furthermore, the Superior Court held that even if Kweh (1) was aware of the danger posed by the door, (2) knew the pedestrian path was perfectly safe, and (3) opted for the dangerous path,

such contributory negligence, by statute cannot act as an absolute bar to recovery. Accordingly, absent facts that are so clear that reasonable minds could not differ, the trial court may not grant summary judgment and it remains the responsibility of the ultimate fact finder to weigh evidence and apportion negligence.

*Id*. at *8.

As Speedway notes, however, the Superior Court did uphold summary judgment on choice of ways in *Spady v. Acme Mkts*., No. 1900 EDA 2016, 2017 Pa. Super. Unpub. LEXIS 3740 (Pa. Super. Ct. Oct. 10, 2017).  ECF No. 28 at 12–13.  In that case, the plaintiff fell on a mound of snow in a parking lot where, "[a]side from mounds of snow at the end of each row of parked cars, all parking spaces and travel lanes in the lot were clear of snow and ice."  *Spady*, 2017 Pa. Super. Unpub. 3740, at *1.  Furthermore, there does not appear to be any question in *Spady* that the mound of snow was obvious or that the plaintiff was unaware of it.  *Id.* at 9.  Indeed, in his deposition, the plaintiff could only say that he chose the route over the mound of snow because he saw a handicapped parking sign and "he figured that 'if anything is going to be clear, it's going to be that part,'" nor could he explain why he took the longer, snow covered route instead of the shorter, snow free route.  *Id*. at *8–*9.  As such, the Superior Court affirmed the entry of summary judgment in defendant's favor.  *Id.* at 9.

> **b.    Analysis:  Genuine Issues of Fact Exist Regarding Whether Mr. Snair Failed to Heed an Open and Obvious Hazard and Whether Alternate Routes Were Safer.**

Based on Pennsylvania courts' application of the "choice of ways" doctrine, summary judgment is inappropriate in this case because it is not "indisputably obvious" that Mr. Snair either failed to heed an obvious hazard or that Speedway's proposed alternate routes were, in fact, safe. *See O'Brien,* 638 A.2d at 250 ("This is not a situation where the facts so clearly bespeak negligence by the plaintiff that the issue should have been removed from the jury.");  *Kweh*, 2017 Pa. Super. Unpub. LEXIS 4009 at *8–10.

Indeed, *Spady*, on which Speedway relies, provides a useful counterpoint to the situation Mr. Snair faced.  Unlike the plaintiff in *Spady*, Mr. Snair did not choose a path that was clearly blocked by a mound of snow/ice;  rather, Mr. Snair testified that he was not aware of the patch of snow and ice until his fall, in part because the snow and ice had taken on a color similar to that of the underlying pavement.  *See* ECF No. 49-1 at 176:14–177:1.  Furthermore, Speedway's attempt to analogize to *Spady*, arguing that Mr. Snair failed to exercise ordinary judgment to avoid an obvious hazard,  ECF No. 28 at 15, is unavailing because Mr. Snair testified that he was, in fact, looking out for vehicles moving around the parking lot, not blithely (and knowingly) attempting to traverse a mound of snow.  *See* ECF No. 49-1 at 145:11–20.  Finally, the possibility of a gas spill or fall resulting from tripping over the fueling hose (or removing and reinserting the hose) and the danger posed by other cars moving around the parking lot suggests that the alternate routes proposed by Speedway were not clearly safer.  As such, genuine issues of fact exist as to whether Mr. Snair either failed to heed an obvious hazard or chose a dangerous route over a safe one, and the apportionment of fault, if any, should be left to a jury.

Having found that there are genuine issues of material fact as to (1) whether Speedway had notice of the snow and ice Mr. Snair fell on, and (2) whether Mr. Snair failed to heed an obvious hazard and chose a dangerous route over a safe route, Speedway's Motion for Summary Judgment will be denied in full.

### B.    Shields' Motion for Summary Judgment as to Plaintiffs' Claims will be Denied

Like Speedway, Shields (Speedway's snow and ice removal contractor), also moves for summary judgment as to Plaintiffs' claims, arguing that (1) it owed no duty to Mr. Snair at the time of the accident;  (2) there is no evidence that it breached any duty under its contract with Speedway;  (3) there is no evidence Shields had notice of the dangerous condition;  and (4) there

is undisputed evidence that Mr. Snair "failed to heed an open and obvious condition."  ECF No. 31 at 2.  Shields' first two arguments rest on the proposition that any legal duty Shields had to Mr. Snair is defined by the terms of Shields' contract with Speedway.  *Id.* at 5–6.  Accordingly, Shields argues that it could not have breached any relevant duty to Mr. Snair because (1) it had transferred performance of the snow and ice removal services to subcontractor Sauer and (2) its duty, if any, had not been "activated" because there was neither two inches of snowfall nor a request to salt before the time of the accident.  *Id.* at 5–8.

Plaintiff argues in opposition that, notwithstanding Shields' subcontract with Sauer, Shields still owed a duty to protect Mr. Snair from harm.  ECF No. 45 at 8.  Plaintiffs observe that Shields entered into a contract with Speedway to perform snow and ice removal services at the Barkeyville station and that a provision of that contract states "[i]f we permit you to subcontract by prior written assent, you shall not be relieved of or released from, any of your obligations or responsibilities under this Contract."  *Id.*  As such, Plaintiffs argue that there is a genuine question of fact as to whether Shields' duties were "being performed with care," given the presence of the patch of snow and ice on which Mr. Snair fell.  *Id.* at 8–9.

### 1.    Legal Principles

In general, "'[d]uty, in any given situation, is predicated on the relationship between the parties at the relevant time.'"  *Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985) (quoting *Morena v. South Hills Health System*, 462 A.2d 680, 684 (Pa. 1983)).  "The scope of this duty, however, is limited to those risks that are reasonably foreseeable by the actor in the circumstances of the case."  *Id.*  At summary judgment, "[o]nly when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff."  *Migyanko v. Thistlewaite*, 419 A.2d 12, 14 (Pa. Super. Ct. 1980)*; see also Truax v. Roulhac*, 126 A.3d 991, 1000 (Pa. Super. Ct. 2015).

In the case of a contracting party's duty to a third person,

> It has long been the law of this Commonwealth that a contracting party may owe a duty, imposed by law and society, to perform its contractual obligations in such a manner as to avoid injury to third parties…In such an instance, "[i]t is not the contract per se which creates the duty;  it is the law which imposes the duty because of the nature of the undertaking in the contract."

*Steinbacher v. Diversified Maintenance Sys., Inc.*, No. 1:10-cv-2322, 2012 U.S. Dist. LEXIS 165408, at *10 (M.D. Pa. Nov. 20, 2012) (quoting *Farabaugh v. Pa. Turnpike Com'n*, 911 A.2d 1264 (Pa. 2006) and *Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961)).  That said, "[t]he extent of the duty and the subsequent questions of breach and causation remain to be measured by 'the nature and scope of [the] contractual undertaking.'" *Farabaugh,* 911 A.2d at 1284.

Accordingly, Pennsylvania courts and federal courts in this Circuit have applied Restatement (Second) of Torts §§ 324A and 383.  *See Farabaugh*, 911 A.2d at 1278 (noting that "the principal [sic] established in *Otis Elevator* has been formalized in Section 324A of the Restatement (Second) of Torts.");  *Steinbacher*, 2012 U.S. Dist. LEXIS 165408, at *10 (applying § 383).  According to § 324A,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Further, under § 383 of the Restatement (Second) of Torts, "[o]ne who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside the land as

13

though he were the possessor of the land." *See also Steinbacher*, 2012 U.S. Dist. LEXIS at \*14 (noting that § 383 "impos[es] the same liability as possessor of land on those who act on behalf of possessors of land").

Therefore, "a plaintiff may bring a cause of action sounding in tort based upon a defendant's negligent performance of contractual obligations owed to another party." *Farabaugh*, 911 A.2d at 1278 (citing Restatement (Second) of Torts § 324A). Thus, the rule articulated in *Otis Elevator* and *Farabaugh* does not stand for the narrow proposition, advanced by Shields, that a party to a contract can only be liable to a third person where injury is caused by the breach of contractual duties. Rather, the "nature and scope of [the] contractual undertaking" is simply a limitation on the general rule, and the duty imposed on a party to a contract (like Shields) extends to the reasonably foreseeable risks arising from performance of contractual obligations. *See Otis Elevator*, 168 A.2d at 575 (noting that injury to third persons is reasonably foreseeable for failure to properly carry out contractual undertaking to inspect elevator).

To ascertain the scope of the reasonably foreseeable harms, courts look to the duties defined in the contract. *See Farabaugh* 911 A.2d at 1284. Pennsylvania follows the so-called "plain-meaning rule" of contract interpretation. *See* 1 Corbin on Pennsylvania Contracts § 24.01. Accordingly, under Pennsylvania law, "[w]hen interpreting a contract, the court's paramount goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 212 (3d. Cir. 2020) (quoting *Halpin v. LaSalle Univ.*, 639 A.2d 37, 39 (Pa. Super. Ct. 1994)). "[I]n determining the intent of the contracting parties, all provisions in the agreement will be construed together and *each will be given effect*." *Univ. of the Scis.*, 961 F.3d at 212 (quoting *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639 (Pa. 2009) (emphasis added by *Univ. of the Scis.*). Moreover, "'Courts in

14

interpreting a contract do not assume that its language was chosen carelessly.'  Neither can it be assumed that the parties were ignorant of the meaning of the language employed."  *Steuart v. McChesney*, 444 A.2d 659, 662 (quoting *Moore v. Stevens Coal Co.*, 173 A.2d 661, 662 (Pa. 1958) and citing *Fogel Refrigerator Co. v. Oteri*, 137 A.2d 225, 231 (Pa. 1958)).

> **2.    Analysis: Genuine Issues of Fact Exist as to Whether Shields Breached its Duty of Care, Whether it Had Notice, and Whether the Hazard was Open and Obvious**

Here, Shields' contract with Speedway states that "[f]or the 2015-2016 and 2016-2017 winter seasons, Speedway LLC has established the following standards for snow plowing services, keeping in mind the goal of providing a safe environment for our customers and associates."  ECF No. 33-1 at 2 (emphasis original).  Shields' snow clearing duties specifically included "plowing and removal of all snow from . . . Gasoline and Diesel Dispenser fueling areas."  *Id*.  The contract further provides that "[i]f we [Speedway] permit you to subcontract. . . you shall not be relieved or released form any of your obligations or responsibilities under this Contract.  For purposes of this Contract, Work performed by subcontractors shall be deemed to be Work performed by you."  *Id.* at 5.

Applying the plain-meaning rule to the Speedway-Shields contract, the Court finds that "plowing and removal of all snow from…Gasoline and Diesel Dispenser fueling areas," ECF No. 33-1 at 2, is not ambiguous and that Shields was required to do more than just plow the area near the gas pumps, but also clear snow and ice from between the pump and the canopy support column.  Shields' contract with Speedway also specifically refers to the purpose of the contract as "providing a safe environment for our customers and associates."  *Id.* Slip and fall accidents resulting from improperly or incompletely cleared snow and ice are, therefore, among the reasonably foreseeable risks to third parties within the nature and scope of the contractual

undertaking.  It is true, as Shields points out, that it subcontracted the actual performance of those obligations to Sauer.  ECF No. 31 at 5.  But, the Speedway-Shields contract unambiguously imposes the snow removal duties on Shields *regardless* of whether Shields was permitted to subcontract the work to another party, *see* ECF No. 31-1 at 5, and Shields explicitly reserved the right, in its subcontract with Sauer, to monitor and inspect Sauer's work.  *See* ECF No. 33-5 at 4.

Accordingly, the Court finds that Shields did have a duty, arising out of its obligations under the contract with Speedway, to act with reasonable care to protect third persons, like Mr. Snair, from reasonably foreseeable harms related to snow and ice in Speedway's parking lot.  And, at a minimum, there is a genuine question as to whether Shields exercised reasonable care in performing its duties and monitoring its subcontractor.  *See* ECF No. 35 at 9 (citing to excerpts from the Deposition of Nancy Cockrell).  Shields' second argument—that it did not breach a specific contractual duty—misses the mark because the issue is not whether Shields breached a contractual obligation but whether it breached a duty of care owed to third persons.  Finally, because Restatement (Second) of Torts § 383 imposes the same liability on a contractor, like Shields, as it does on possessors of land, like Speedway, *see Steinbacher*, 2012 U.S. Dist. LEXIS at *14, Shields' arguments regarding notice and Mr. Snair's alleged failure to heed an open and obvious condition fail for the same reasons that Speedway's related arguments do—i.e., there are genuine questions of fact that must be decided by a jury.  Accordingly, Shields' Motion for Summary Judgment as to Plaintiff's claims will be denied in full.

### C.    Sauer's Motion for Summary Judgment Will Be Granted

In their cross-motions for summary judgment, Shields and Sauer (the subcontractor Shields engaged to plow and salt at the Barkeyville gas station) contest whether, under the subcontract, Sauer is liable to Shields for contribution or indemnity arising out of Plaintiff's claims.

16

Shields argues that "there can exist no scenario where [Shields] is facing potential liability to Plaintiffs arising from the alleged negligent provision of snow and ice removal services where Sauer would not then owe contractual indemnity over to [Shields]." ECF No. 39 at 2. That is, "[i]nsofar as the Snairs' allegations of negligence against [Shields] are directly related to Sauer's performance of the Subcontracted Services Sauer agreed to perform for [Shields] at the subject property, [Shields] is entitled to indemnification from Sauer." ECF No. 31 at 13.

Sauer, in contrast, contends that summary judgment in its favor is warranted because Plaintiffs' claims do not arise out of "(1) Subcontractor's performance of Subcontracted services under the agreement; or (2) any breach by Subcontractor of its representations, warranties, covenants, or obligations under the Agreement." ECF No. 35 at 5. In support, Sauer notes that there had not been two inches or more of snowfall at the time of the accident, and Sauer was not directed to salt the lot until after Mr. Snair's fall. *Id.* Furthermore, Sauer contends that the area where Mr. Snair fell was outside the scope of its subcontract because "Sauer was not contracted to throw hand salt or shovel, and the area of Plaintiff's fall was an area where a plow could not fit." *Id.* As such, Sauer maintains that "Shields has not met its burden of proving that it is entitled to indemnification or contribution as there is no evidence that Plaintiffs' claims implicate Sauer's performance of its duties, or any breach by Sauer in the performance of its duties." *Id.*

### 1. Legal Principles

In addition to the "plain-meaning rule" of contract interpretation when confronted with interpretation of an indemnification provision, Pennsylvania courts apply the "*Perry-Ruzzi* rule." *See Molettiere v. Brittany Square CVS, Inc.*, 2013 Pa. Super. Unpub. LEXIS 2755, at *7 (Pa. Super. Ct. 2013). According to the *Perry-Ruzzi* rule, "a contract will not be construed to provide indemnification against a party's own negligence unless that intent is expressly and unequivocally

stated and the circumstances indicate that the contract is intended to so apply." *Id.* In a case like this one, involving a request for indemnification under a snowplowing contract, the *Molettiere* court examined the history and application of the *Perry-Ruzzi* rule, finding that the core concern addressed by the rule is broadly worded indemnification provisions that would "'place[] the indemnitor in, essentially, the position of an insurer'" of the indemnitee's own negligence. *Id.* at *23 (quoting *Deskiewicz v. Zenith Radio Corp.*, 561 A.2d 33, 36 (Pa. Super. Ct. 1989)).

> **2.    Analysis: The Area of Mr. Snair's Fall Was Outside the Scope of Sauer's Duties Under the Subcontract; Therefore, Sauer Has No Contractual Obligation to Indemnify Shields.**

Shields' contract with Speedway provides that Shields was to provide services "including, but not limited to, plowing and removal of all snow from" the parking lot, including "Gasoline and Diesel Dispenser fueling areas, including areas around kerosene dispensers." ECF No. 33-1. The subcontract between Shields and Sauer, drafted by Shields, stipulates that "Shields has requested that Subcontractor [Sauer] provide, on behalf of Shields, *certain of the services* undertaken by Shields pursuant to the Services Agreement" (emphasis added) and directs the reader to "Exhibit C" for "[t]he Subcontracted Services and related specifications…(the 'Statement of Subcontract Work')." ECF No. 33-5 at 2. Exhibit C, the "Statement of Subcontract Work," lists the following items, among others, under "Services Performed:" "Per Push of Lot (2" Trigger);" "Salt Application (With Approval);" and "Combination Push & Salt." *Id.* at 15. Importantly, however, "Shoveling Hourly" is listed under "Out of Scope Equipment/Material" in Exhibit C. *Id.* The "Scope of Work (Exhibit D)" provides that Sauer was to "Push all snow to an agreed-on area of the parking lot. Lot area includes removing snow from the following locations," including "Gasoline and Diesel Dispenser fueling areas, including areas around kerosene dispensers." ECF No. 33-6 at 2. Next, the Scope of Work states that "Additional services <u>must</u> be approved by SFM

[Shields].  They are by request only and can include (but may not be limited to):  Loading into a truck and hauling snow off site;  clearing snow from roof, between parked vehicles and HVAC air intakes;  Requests for plowing less than two inches."  *Id.* (emphasis original).  Finally, under "Additional Services," the Scope of Work notes that "[a]ny service requested outside of the normal scope of work is subject to approval from SFM [Shields]/Speedway before completing."  *Id.* at 3.

Taken together, the Court reads these contractual provisions as follows:  Shields was contracted by Speedway to conduct "plowing and removal of all snow" from the parking lot. Shields subcontracted Sauer to provide "certain" (i.e. not necessarily all) "of the services undertaken by Shields pursuant to the Services Agreement."  Specifically, Sauer was tasked with pushing snow off the lot and salting in accordance with the two-inch trigger or on request. Although "push" is not defined in the subcontract, the fact that "Shoveling Hourly" is listed as "Out of Scope" indicates that the parties did not intend "push" to include "shovel."  This conclusion is further supported by the fact that "Out of Scope" activities required prior approval by Shields—including clearing of snow from areas inaccessible to a snowplow, such as space between parked vehicles—and were not subject to the automatic two-inch trigger.

Therefore, the plain language of the subcontract[2] does not support Shields' position that "all of its duties were assumed by Sauer via the Subcontractor Agreement."  ECF No. 31 at 5. Whereas Shields' contract with Speedway required it to "Plow *and* remove all snow," Sauer's subcontract with Shields only required it to "Push [i.e. plow] all snow."  *Compare* ECF No. 33-1 at 2 *with* ECF No. 33-6 at 3;  *see also Steuart*, 444 A.2d at 662 ("Courts in interpreting a contract

---

[2] Although the Court finds the subcontract to be unambiguous, any ambiguity—for example, in whether "push" is synonymous with "plow"—would be construed *against* Shields, who drafted the agreement, s*ee Molettiere*, No. 3198 EDA 2011, 2013 Pa. Super. Unpub. LEXIS 2755, at *6 (citing *Bucks Orthopaedic Surgery Assocs., P.C. v. Ruth*, 925 A.2d 868, 871 (Pa. Super. Ct. 2007), and the result would be the same.

do not assume that its language was chosen carelessly.") (citation omitted).  Thus, while Shields

was obligated to "remove all snow" from the parking lot, Sauer was only required to plow, absent

specific authorization to clear areas inaccessible to a plow.  As such, the Court agrees with Sauer

that the area of Mr. Snair's fall was outside of the scope of the subcontracted services.

Turning to the issue of whether Sauer is obligated to indemnify Shields, Article 6 of the

subcontract, "Indemnification," provides, in relevant part, that Sauer is to indemnify Shields from

> claims, demands or causes of action relating to or arising out of or
> caused by: (i) Subcontractor's performance of the Subcontracted
> Services under this Agreement, including claims, demands or causes
> of action relating to or arising out of the death of or personal injury
> to any person (including Subcontractor's employees) or damage to
> tangible personal property or (ii) any breach by Subcontractor of its
> representations, warranties, covenants or obligations under this
> Agreement.

ECF No. 33-5 at 6.  In short, for Sauer to be required under the subcontract to indemnify Shields,

the underlying cause of action must relate to Sauer's "performance of the Subcontracted Services"

or a breach of the contract by Sauer.  It is undisputed that the underlying injury alleged in this case

occurred in an area of the parking lot not accessible to a snowplow.  *See* ECF No. 40 at ¶ 43.  As

discussed above, this area was outside of the scope of the Subcontracted Services, absent special

authorization from Shields, and, importantly, Shields admits that Sauer was "not responsible for

shoveling or spreading salt by hand."  *Id.* at 38.  Moreover, there is no evidence in the record of

Shields ever directing or authorizing Sauer to shovel the area where Mr. Snair fell.  Therefore,

contrary to Shields' assertion that the Snairs' "claims of negligence against [Shields] [are] directly

related to Sauer's performance of the Subcontracted Services," it was a hazardous condition in an

area outside the scope of Sauer's obligations under the subcontract that allegedly caused Mr. Snair

to fall.

Given the differing scope of Shields' and Sauer's duties regarding snow and ice removal, the broadly worded language of the indemnity provision here directly implicates the *Perry-Ruzzi* rule. By requiring indemnification for injuries "relating to or arising out of or caused by…Subcontractor's performance of the Subcontracted Services," ECF No. 33-5 at 6, the indemnity provision here would make Sauer liable to Shields for *any* injury related to snow and ice removal, regardless of whether Sauer was in any way at fault. Indeed, Shields seeks indemnification from Sauer even though Shields acknowledges that "[t]here is no evidence that Sauer performed its acts as SFM's [Shields'] subcontractor in a negligent manner." ECF No. 31 at 8. Furthermore, there is no direct negligence claim against Sauer, *see* ECF No. 35 at 4 n.1, and the only evidence about Sauer's snowplowing practices indicates that Sauer plowed snow *away* from the area where Mr. Snair fell. ECF No. 40 at ¶ 44. Thus, Shields' argument that "any liability against SFM to Plaintiffs would necessarily trigger the indemnification provision" explicitly seeks to place Sauer "'in, essentially, the position of an insurer'" of Shields, *see Molettiere*, 2013 Pa. Super. Unpub. LEXIS 2755, at *23 (citation omitted), which is exactly the result the *Perry-Ruzzi* rule seeks to avoid.

Therefore, based on the plain meaning of the Shield-Sauer subcontract and the undisputed facts of the underlying personal injury case, the Court concludes that Mr. Snair's alleged injuries did not arise out of or relate to Sauer's performance of the subcontracted services, and therefore, summary judgment will be entered in Sauer's favor.

## IV.   Conclusion

For the foregoing reasons, Speedway's and Shields' Motions for Summary Judgment as to Plaintiffs' claims will be DENIED. Shields' Motion for Summary Judgment with regard to its claim for indemnity under its subcontract with Sauer will also be DENIED. Sauer's Motion for

Summary Judgment, seeking judgment in its favor as to Shields' claims against it, will be GRANTED.

DATED this 19th day of January, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record