IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTY ALLEN SNAIR and JAMIE L. SNAIR, <br><br> Plaintiffs, <br> v. <br><br> SPEEDWAY LLC <br><br> Defendant. <br> ------------------------------------------------------ <br><br> MONTY ALLEN SNAIR and JAMIE L. SNAIR, <br><br> Plaintiffs <br><br> v. <br><br> SHIELDS FACILITIES MAINTENANCE, <br><br> Defendant. | 1:18-CV-00333-CCW <br> **(CONSOLIDATED)** <br> 1:18-CV-00376-CCW |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Shields Facilities Maintenance's ("Shields") Motion for Reconsideration and/or Clarification (the "Motion"). ECF No. 63.

**I.   Background**

On January 19, 2021, the Court denied Shields' Motion for Summary Judgment. ECF Nos. 59 & 60. In relevant part, the Court found (1) that Shields owed a duty of care to protect individuals, such as Mr. Snair, "from reasonably foreseeable harms related to" Shields' obligations under its snow and ice removal services contract with Defendant-landowner Speedway LLC ("Speedway"); (2) that there is "a genuine question as to whether Shields exercised reasonable care in performing its duties and monitoring its subcontractor;" and (3) that there are genuine

questions of fact as to whether Shields had notice of the dangerous patch of snow and ice on which Mr. Snair fell.  ECF No. 59 at 16.

Shields moved for reconsideration and/or clarification on January 26, 2021.  ECF No. 63.  In its Motion, Shields argues that the Court erred because it did not properly consider Shields' argument that Shields' obligations under its contract with Speedway had not been "triggered" at the time of Mr. Snair's fall and because there is insufficient evidence to create a genuine factual question as to whether (1) the snow and ice Mr. Snair fell on was present at a time Shields' duty was "active"  and (2) Shields had constructive notice of the dangerous condition.  *Id.* at ¶¶ 3–6.  In the alternative, Shields requests that the Court clarify its January 19, 2021 decision as to (1) "how and when" Shields' obligations under its contract with Speedway were "triggered" and (2) "what evidence creates a genuine issue of material fact" with respect to the existence of the snow and ice at a time when Shields' contractual obligations had been "triggered."  *Id.* at ¶ 9.[1]  Plaintiffs oppose Shields' Motion, and Defendant Speedway takes no position on the matter.  ECF Nos. 68 and 69.

## II.     Legal Standards

"The purpose of a motion for reconsideration 'is to correct manifest errors of law or fact or to present newly discovered evidence.'"  *EEOC v. United States Steel Corp.*, Civil Action No. 10-1284, 2012 U.S. Dist. LEXIS 49167, at *22 (W.D. Pa. Apr. 5, 2012) (quoting *Howard Hess Dental Lab. Inc. v. Dentsply Intern, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)).  Thus, because "federal courts have a strong interest in the finality of judgments" and because "a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court," such motions "should be granted sparingly."  *Id.* at *23–*24 (citations omitted).

---

[1] Shields also requests oral argument.  ECF No. 63 at ¶ 10.  Because the Court concludes that oral argument will not materially assist the Court in deciding this Motion, Shields' request is denied.

To prevail on a motion for reconsideration, the movant must demonstrate: (1) a change in controlling law; (2) the availability of new evidence not previously before the court; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Allaham v. Naddaf,* 635 Fed. Appx. 32, 35–36 (3d Cir. 2015) (quoting *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014); *see also Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). In its Motion, Shields does not identify a change in controlling law or alert the Court to new evidence; rather, Shields argues that reconsideration is necessary to correct purported errors of fact and law. ECF No. 64 at 5, n.1.

"When the basis of a motion for reconsideration is to correct a manifest injustice, the moving party must show that the underlying decision 'was clearly wrong and that adherence to the decision would create a manifest injustice.'" *EEOC,* 2012 U.S. Dist. LEXIS 49167, at *58 (quoting *Payne v. DeLuca,* Class Action No. 2:02-cv-1927, 2006 U.S. Dist. LEXIS 89251, at *5–*6 (W.D. Pa. Dec. 11, 2006)). As such, when the moving party asserts that the court "overlooked certain evidence or controlling decisions of law which were previously presented," a motion for reconsideration should only be granted "if the matters overlooked might reasonably have resulted in a different conclusion." *Payne*, 2006 U.S. Dist. LEXIS 89251, at *5 (citing *Cataldo v. Moses*, 361 F. Supp.2d 420, 433 (D. N.J. 2004)). Thus, "[a] mere disagreement with the decision does not suffice to show that the court overlooked relevant facts or controlling law." *Id.* (citing *United States v. Compaction Sys. Corp.*, 88 F. Supp.2d 339, 345 (D. N.J. 1999)).

A motion for clarification, on the other hand, seeks to have "'the court explain or clarify something ambiguous or vague, not to alter or amend.'" *Cottillion v. United Ref. Co.*, Civil Action No. 09-140, 2014 U.S. Dist. LEXIS 39324, at * 4 (W.D. Pa. Mar. 24, 2014) (quoting *Resolution Trust Corp. v. KPMG Peat Marwick*, Civil Action No. 92-1373 1993 U.S. Dist. LEXIS 16546, at

\*5 (E.D. Pa. June 8, 1993). Thus, as a threshold matter, "[t]he court must, therefore, determine whether…[its] findings of fact and conclusions of law are ambiguous or vague." *Trinity Indus. v. Greenlease Holding Co.*, Civil Action No. 08-1498, 2016 U.S. Dist. LEXIS 97824, at \*4 (W.D. Pa. July 27, 2016) (citing *Cottillion*, 2014 U.S. Dist. LEXIS 39324, at \*4).

### III.  Discussion

Like its motion for summary judgment, Shields' Motion for Reconsideration turns on the argument that it did not owe a duty of care to Mr. Snair at the time of the accident because Shields' obligation to perform under its contract with Speedway had not been "triggered" by either two inches or more of snowfall or a request from Speedway to spread salt. *See* ECF No. 64 at 6–7. Moreover, Shields also again argues that Plaintiffs have not presented evidence from which a jury could conclude that the patch of snow and ice on which Mr. Snair fell existed at a time when Shields' duty had been "triggered" and, Shields therefore concludes it had no duty to Mr. Snair at the time of his fall. *Id.* at 9. Finally, due to the alleged lack of evidence regarding "when and how the subject patch of ice was created," Shields again contends that there is no genuine issue of fact as to whether it had notice of the hazardous condition. *Id.* at 10.

Notably, Shields does not point to any controlling law or factual evidence that the Court overlooked in reaching its decision. Rather, Shields' arguments are premised entirely on its assertion that the Court erred in its finding that (1) Shields owed a duty of care to Mr. Snair and (2) that genuine questions of fact exist as to whether that duty was breached and whether Shields had notice of the snow and ice where Mr. Snair fell. In short, Shields' Motion is simply an attempt "to re-litigate and reargue issues which have already been considered and disposed of by the court." *EEOC*, 2012 U.S. Dist. LEXIS 49167, at \*23–\*24. As such, the Court is not persuaded that "the underlying decision 'was clearly wrong and that adherence to the decision would create a manifest

injustice.'"  *Id.* at *58 (quoting *Payne*, 2006 U.S. Dist. LEXIS 89251, at *5–*6).  Shields' Motion, to the extent it seeks to have the Court reverse its prior decision, will therefore be denied.

With respect to Shields' request for clarification, it is evident from its Motion that Shields believes its duty of care existed only at those times when its contractual obligations were "active;" that is, from the time snowfall surpassed two inches on a given date or from the time a request to salt was received until the snow removal or salt spreading was completed.  However, Shields does not cite to, and the Court is unaware of, any authority for the proposition that a contractor's duty of care to third-party business invitees is so temporally limited.  Shields' position, as the Court understands it, would vitiate the rule laid down by the Pennsylvania Supreme Court in *Otis Elevator*:

> Generally a party to a contract does not become liable for a breach thereof to one who is not a party thereto.  However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons - strangers to the contract - will not be injured thereby.

*Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961).  Indeed, although the facts in *Otis Elevator* indicate that the allegedly negligent inspection/repair of the elevator had occurred within an hour of the accident, the court did not impose a temporal limitation on the scope of Otis' duty to third-persons, holding instead that, because Otis was charged with periodically inspecting the elevator, if the elevator "was in a defective or dangerous condition discoverable by reasonable inspection" then "Otis would be liable to third persons, regardless of any privity of contract, who might be injured by Otis' failure to properly perform its contractual undertaking of inspection." *Id.*

Thus, Shields' argument—that it had no duty to individuals in Mr. Snair's position because its contractual obligations were not "triggered" on the date of the accident until after Mr. Snair's fall—is unavailing.  Instead, in accordance with Pennsylvania law, the Court held that Shields

5

owed a duty of care to business invitees, like Mr. Snair, to protect them from reasonably foreseeable harms related to snow and ice in Speedway's parking lot. Whether that duty was breached, and whether Shields had notice of the dangerous condition, are questions the Court determined should be left to a jury.

Similarly, Shields' contention that the evidence is lacking with regarding "when and how" (1) its obligations were "triggered" and (2) the snow and ice came to be in the location where Mr. Snair fell misconstrues the law, ignores record evidence, and demands too high a burden of proof from Plaintiff at the summary judgment stage. To prevail at summary judgment, Shields was required to demonstrate that there was no genuine dispute as to any issues of material fact. Fed. R. Civ. P. 56(a). While the evidence creating an issue of material fact must be more than a "scintilla," it may amount to less than a preponderance. *Canton v. Kmart Corp.*, 470 Fed.Appx. 79, 82–83 (3d Cir. 2012) (quoting *Williams v. Borough of West Chester,* 891 F.2d 458, 460–61 (3d Cir. 1989)). Put another way, for Plaintiff to survive Shields' motion for summary judgment, there must simply be material "evidence that the [snow and] ice was observable for any significant period of time prior to the accident" in order for "a jury [to] reasonably infer that [Shields] had constructive notice of the hazardous condition." *Tameru v. W-Franklin, L.P.,* 350 Fed.Appx. 737, 740 (3d Cir. 2009).

Accordingly, regarding Shields' specific requests for clarification, the record here is replete with evidence of Shields' contractual obligations being triggered in the days preceding Mr. Snair's fall. *See* ECF No. 33-2 at 23–31 (service tickets showing the Speedway lot was plowed five times and salted twice between December 9, 2016 and December 12, 2016). Likewise, a permissible inference that Shields had notice of the snow and ice can be made. Specifically, the lot was plowed and salted in the days prior to the December 13, 2016 accident, most recently on December 12,

2016, the day before the accident, *see* ECF No. 32 at ¶ 20;  Speedway's incident report recorded the temperature on the date of the accident as 24 degrees Fahrenheit, *see* ECF No. 49-5 at 45:25–46:2 (Dep. of Casandra Jackson);  surveillance video photos from the time of the accident show large patches of snow and ice in the parking lot, *see* ECF No. 32 at ¶ 24;  and Mr. Snair testified that the snow and ice appeared old and was about an inch in depth, *see* ECF No. 33-7 at 67:9–12 and 145:5–10—more than the "light dusting" that had fallen over the course of the morning leading up to the accident.  *See* ECF No. 32 at ¶¶ 21–23.  From these facts, a jury could infer that the snow and ice where Mr. Snair fell had existed at least as of the time the lot was last plowed on December 12, 2016.  That is, the evidence permits an inference that the snow and ice "was observable for [a] significant period of time," *Tameru*, 350 Fed.Appx. at 740, such that a jury could find that Shields had notice of its existence.

## IV.     Conclusion

For the foregoing reasons, Defendant Shields Facilities Maintenance's Motion for Reconsideration is hereby DENIED.  To the extent Shields requested clarification of the Court's prior decision denying Shields' Motion for Summary Judgment, such clarification is stated fully herein.

DATED this 10th day of February, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record